Case number 10-0502, the state of Brunel, Farfan v. Commonwealth. Counselor for Farfan, the state? Yes, sir. Good morning. For the record, my name is Tim Grace, G-R-A-C-E, on behalf of the plaintiffs in this matter. Your Honor, this case, I'm going to limit my remarks to the essence of what I believe this case involves. I know you've read the facts. I'm sure you're familiar with the facts. But I just want to briefly go over what I think makes this case different than the typical electrical cases. As you recall, this was a single-family house owned by a family. There was a fetal line that ran down the back. The line was whacking against an overgrown tree in the back of the property, causing bolts of electricity to shock off. The numerous calls were made... Let me stop you right there, because I'm not sure why that has anything to do with... Unless your argument is, and I think you get close to saying this, that because ComEd did not respond to those earlier calls, and those describing the shock, or the electrical sparks being given off when it's very windy conditions, and causing the homeowners to even fear sleeping in that upper bedroom, if that sort of makes it okay to take things into their own hands. I just don't follow that. I understand your question. And the point is this. The foreseeability argument, the duty argument, in the plaintiff's position, increases based upon ComEd's knowledge and failure to act. If I wake up on Sunday morning before the Bears game and say, I'm going to go look out my window and say, I'm going to go trim my tree, I think it's bad, and I go out there and I engage in some activity and I get injured, I would agree with counsel's position that, well, how can ComEd be on the hook for that? Well, they've been told over and over again... Well, let's modify it a little bit. Let's say ComEd went out there and took a look and said, we understand the complaints, but under our guidelines, it still doesn't fall within whatever the measurement is to require us to trim the tree. And so there's a difference of opinion. ComEd says no trimming is required. The homeowners say absolutely trimming is required. How does that get resolved? Well, I think that in our case specifically, there was no question that there needed to be trimming. When the ComEd individual came out, he made an admission that, yeah, you better call back to the office. That's what the deposition transcripts indicated from the homeowner. What did that mean, yeah, you better call back to the office? There's a problem here. What did he say? Well, if he was there to actually trim it or arrange to have it trimmed, why didn't he simply make that arrangement? Your Honor, I think that's a great question that should be posed to Commonwealth Edison or at least perhaps a jury to look at. Let me ask you a question. What is your response to the traditional case law that says that there is no duty when there's an open and obvious danger? Well, I think that my response would be twofold. Well, would limit myself to the deliberate encountering exception. Right. But are you – what is your response? Is the trial court here concluded that this was an open and obvious danger? Correct? Correct. All right. Now, was the court wrong in concluding that this was an open and obvious danger? No, I do not believe they were incorrect. So we have to face that, do we not? We do. All right. Now, the exception to the open and obvious danger is conduct – well, first of all, it's normally applied in an employment or similar economic compulsion situation. It hasn't been traditionally applied in a setting that's not economically motivated. Is that true, or do you agree with that kind of? I sort of agree that the case law has gone that way. Well, let's forget that then. Push that aside. Let's assume for purposes of today's argument that there was some sort of economic compulsion here. Okay? And let's assume now that we have an exception to the open and obvious danger of electrical wires and conducting electricity. Okay? So how do you ask us to write this to say that this conduct was objectively reasonable? In other words, that the persons involved would still assume the risk and be reasonable in doing it under these circumstances? Well, my response is this. When you have a danger, and this isn't just a manhole cover that's off its tilt. This is an arcing electrical danger, Justice. Right. What is, at this point, the homeowner supposed to do? Move to a hotel? The homeowner is supposed to either get a tree-trimming outfit to come pay for it. The homeowner is either supposed to keep writing letters to Commonwealth Edison. But under no circumstances is that homeowner supposed to round up a bunch of people that work for him, and then those people who are union carpenters strap a metal cable around one of those people. Explain to me how that should go to the jury as objectively reasonable conduct. Because Commonwealth Edison was in a better position. For the sake of this argument, Justice, let's assume that Commonwealth Edison was aware and knew that this was an obvious danger that someone could foreseeably get injured, be it they're walking through the backyard during inclement weather and a line snaps and hits them. For the purpose of this argument, let's assume Commonwealth Edison knew that. Who is in a better position? At some point, after months and months and all the things that got involved with Commonwealth knowing when they do not do what they're supposed to do, it is objectionably reasonable that the homeowner will engage in self-help. Right. Yes, I agree. But the deliberate encounter exception, number one, has generally only been applied in an economic compulsion situation, which we really don't have here. But even if we assume that, how do we say that a jury should determine or a fact finder should determine that strapping a metal cable around one's waist is objectively reasonable? We're assuming that Commonwealth Edison was notified. We're assuming that they came out and looked at it and did some trimming but did not trim this branch. We're assuming all those facts. We get to the question, is this, we don't throw out open and obvious because Commonwealth Edison didn't respond to the call. The doctrine doesn't go away. At least I don't think it does. I suppose that your complaint, if I'm understanding you correctly, is the manner in which the tree was trimmed. I don't know how. You've already indicated that the court, we're looking at this to know. But I don't understand how you get past the disregarding the danger. It's open and obvious. And yes, we have this exception in the law that allows for the idea that people will self-help. They'll cut down the branch, but don't they have to do it in an objectively reasonable manner? Can they simply take a metal cable, disregard all that is known about electricity, and then take that on? I'm just saying, how does that get to the jury? There is a line beyond which you don't go. Well, let me respond. With all due respect, who says that the way that they did cut the tree was reasonable? Well, there's about ten different cases in the brief that point out that when you're dealing with electricity, there's certain things you don't do. You don't conduct electricity yourself, which is what they were doing when they attached a metal cable to the one man's torso. Well, there was also a question, and I guess I'm backtracking a little bit here, but there's also a question of whether or not these people knew that the wire, the feeder line, was live. But aren't there multiple cases that say that electrical wires, we presume that they're live? You're correct. So how do we get over all these presumptions? The danger of electricity, the danger of live wires, and then this wrapping of a cable around the torso. I mean, that's what caused this, right? That's what caused it. If they had stuck with the rope, there wouldn't have been this situation. At least we would have hoped. I mean, it's a tragic, tragic accident, but I'm trying to get to what your position is as to assuming that there's a duty, assuming all that. If it's open and obvious, then where do we go? We go to the exception. The exception allows for recovery if the conduct is objectively reasonable. I guess my response to that is simply that I don't see, and this is why I suppose I disagree with you, what is the person supposed to do? At what point do we look at? They aren't supposed to wrap a metal cable around their waist. I don't know that. No matter what. You should never, ever do that. Your Honor, Justice, with all due respect, in the discovery, in their expert disclosures, there was no expert offered by the defense, no guy that was a tree trimmer. Wait a minute. When you say there was no expert offered by the defense, did you offer an expert? No, I did not. Did you file an affidavit in response to this motion for a summary judgment with expert testimony to support your position? We did not. What about the guy doing the antenna? Do we need expert testimony on this? How do we need expert testimony when there are multiple cases that say that the danger of electrical wires is open and obvious to everyone, even like 12-year-old children? Well, there's a case out there that says that when the case of the individual that stuck his hand into the metal box, a reasonable man of average knowledge and understanding, and they found that placing his hand into a metal box was objectionably reasonable and should have been something that should have been covered up so that the person wouldn't have gotten injured. I think these are issues for the jury to decide whether or not what they did, the way they engaged in this treatment of the line and trimming of the tree is proper. Excuse me. Bless you. Okay. I kind of understand, sort of. I just don't know how we get past this one hurdle of whether or not there's a question of fact that this conduct was objectively reasonable. If I'm using the right term, I don't know. I think that's what it is, objectively reasonable. I guess another part of my last portion of my brief, I spoke to the whole system that ComEd had engaged in and how their system just doesn't work. It's a forest. They do not – their job is to deliver electricity and power safely. And if they have these systems and guidelines and tree trimming feeder lines and all these things set up and call-in systems and everything, and they ignored them all. If I call ComEd and said, I've got a branch that's sparking, that should be handled today, within five minutes. They should send someone out. They just ignored it. They ignored it over a long period of time. So as the – it's like a V to me. As the more notice and more knowledge on ComEd, the foreseeability and the things that people will engage in to help themselves increases. And that's something I think that the jury should look at. If the jury comes back and says, you know what, the way in which – the manner in which they engaged in the trimming of these trees was not reasonable, is negligent in and of itself, then so be it. Well, that's what the trial court essentially found, didn't she? That there was no question of material fact that this conduct was objectively reasonable under the circumstances. Right, Justice, and obviously we disagree with that issue. Well, I'm just saying, I think that's the – I mean, I believe that, you know, you get past everything. You're still left with what is traditionally being considered an open and obvious condition, like the pool wires. There is an exception that has been used in economically compulsory cases where they're actually doing something because they're required to. These were people that worked for this fellow. I mean, they didn't get paid. They came out there on a whatever. You can wrap it up. I think that the issues that the court is struggling, especially Justice McBride, is what the trial court struggled with, too. And not to be redundant and keep repeating this, ComEd isn't the situation where I decide to trim my tree, walk out in my backyard and just decide to do it on a Sunday afternoon. It's a situation where they knew, they were told, they've got standards that they present to the certain government agencies about how they're going to provide this type of clearance, growth, and all stuff like that. All those things, they had all that in place. Call-in systems, inspections, post-tree inspection, trim inspection, all these things, and they all failed. It all was ignored. It all didn't work. And that's the essence of the negligence, which makes the foreseeability acts more likely things are going to happen. All right. We'll give you a couple minutes for rebuttal. Thank you. Good morning. May it please the Court. I'm Paul O'Flaherty, appearing for Commonwealth Edison this morning, the defendant in proceedings below and the appellee here. So, you know, now that ComEd, now that we get a sense of what ComEd didn't do, why shouldn't we let the 12 citizens from Cook County decide whether ComEd should have done more and prevented this accident entirely? Because the question of legal duty, Your Honor, is always, as a threshold matter, a question for the Court. And the trial court correctly recognized that and focused on the question of legal duty this morning. Well, there's no question that ComEd had a legal duty to maintain its wires and keep things away from its wires that might certainly cause sparks to fly. ComEd had a duty to do that, didn't it? I'm not sure I would characterize that duty, Your Honor, but I think for – It's the only one that could have controlled what was happening to those wires when the wind got very strong and the trees banged into the wires. ComEd is the only one who could have done something about that, right? Not necessarily, Your Honor. Except for the homeowner. And so between the two of them, when ComEd didn't respond, the homeowner took action. And why shouldn't ComEd be held responsible for the results that occurred? Because the danger was open and obvious, Your Honor, and because the conduct of the plaintiffs was not objectively reasonable. It would seem to me that if it's open and obvious, that ComEd would have an obligation to respond even quicker and not put the homeowners through the multiple phone calls they must have made to ComEd. ComEd knows how dangerous wires can be. ComEd knows that some homeowners are going to want to take matters into their own hands. Why shouldn't ComEd be held to respond quicker? And it looks like they did respond, but they never took any action. Well, Your Honor, I guess the question is, when those complaints were made to Commonwealth Edison, what is the scope of reasonable foreseeability from Commonwealth Edison's standpoint? Because we know, under the line of cases from Ganoust and this Court's opinions in Carroll and Bonder, that it is limited to reasonable foreseeability. Duty extends to events that are objectively foreseeable, not out there in the more remote, conceivably might occur category. So let's ask that question. Commonwealth Edison gets these complaints. We're on summary judgment, so we assume all that testimony is true. What is the scope of foreseeable responsibility? What's been reported is that a tree branch 30 feet in the air is creating some sparks against a power line, a feeder. The constitution of these feeders is described in the deposition of Mr. Rodriguez, Steve Rodriguez from Commonwealth Edison. These are steel cables, three cables braided together. So these things are substantial wires, okay? They are intended to be out there in inclement weather. They are intended to be able to absorb incidental contact from vegetation. But that is the complaint. What is Commonwealth Edison thinking about when it gets that complaint? It's thinking about the possibility of damage to the feeder, right? And in the worst case, it's thinking about, okay, well, if this branch is heavy enough and if the contact is repeated enough and severe enough, maybe it could bring the feeder line down. I think that is the scope of the reasonably foreseeable risk. And if that were the scenario here and, you know, we were... Let's say it did bring it down and it brought it down on one of the homeowners or somebody residing at the home. In that circumstance, Your Honor, I wouldn't be standing here arguing with you about reasonable foreseeability. But then the question becomes, who should take that risk? Should the homeowners take that risk that that feeder line could, in fact, drop or fall or come down because of repeated banging? Or should ComEd take steps to make sure that that risk never happens, including the possibility that the homeowner is going to take actions on its own? Well, first of all, that risk didn't happen. That was not the mechanism of injury here. And that power line did not, in fact, come down until the plaintiffs themselves dropped a 15-foot log on it. That's the actual circumstance here. But whatever those phone calls said about the danger out there, And let's assume that some response on the part of the homeowner would be reasonably foreseeable, although I would refer the Court to the affidavit of the electrical engineer in this case, the unrebutted testimony that said there should have been an additional call and that the only safe way to proceed with this work was to de-electrify those lines while that kind of work is going on. How often does that happen? I'm sorry? How often does ComEd de-electrify any lines? I mean, I'm not aware of a single instance that ComEd has ever done that. And why should we assume that ComEd is going to respond more favorably to that sort of request than the request that it should have responded to, which was trim the tree? Respectfully, well, let me make two points about that, Your Honor. First of all, a call saying we are going to go out there and human beings are going to get on a lift and be within a few feet of that power line, which up until now is 30 feet in the air, a good distance, a standard distance, well insulated from any passersby on the ground. That's an entirely different order of risk than the complaint that Commonwealth Edison got. But those phone calls, whatever they said and whatever risk the homeowners appreciated or the homeowners feared, nothing about those phone calls changed. And just so it's clear, the affidavit from the electrical engineer didn't say that had we received that phone call, we would have cut the power. The affidavit didn't say that, did it? The affidavit said, Your Honor, that that is the standard way to proceed in the industry, that that is required by OSHA regulations, Chapter 29, Section 1910. So if they didn't respond after multiple, multiple calls, is there really any suggestion that the self-help, the knowledge of the objectively reasonable person would know that, hey, those power lines, the electrical power surging in those has to be cut? I'm not sure I understand your question. Well, you're saying that this other affidavit says that the only way this situation could be resolved would be for the electrical lines to be cut off in order to work on this tree limb, right? Do most people understand or appreciate that risk? What if they had just gone forward with using the ropes? Would we be in the same situation, do you think, or could it have occurred? I would hope not, Your Honor. I think, you know, your question is focused on the use of the metal cable here. All right, well, let me ask you this question. Is there a single case that you've cited where there were multiple calls to the utility before the accident happened like we have here? I don't believe there is an analogous case. Does that make it the one that we go over the line on? It does not, Your Honor. Because, Your Honor, the plaintiffs did not proceed in an objectively reasonable way, as your question suggested. When these phone calls were made to Commonwealth Edison, that didn't change the fact that there was a serious, you know, that there was a highly charged electrical wire running behind the Jimenez property. It didn't change the magnitude of that danger, which, as we know, is very serious, indeed fatal. It didn't change the open and obvious character of that danger. Does open and obvious always trump? Are we assuming with the open and obvious that there is a duty? Or not? My understanding of the open and obvious doctrine, Your Honor, is that it relieves the defendant of a duty because the character of the hazard creates, you know, reasonable foreseeability that will be avoided. So by saying it relieves it, it assumes almost, for purposes of argument, that there was a duty to at least respond to the call. But knowing that this is open and obvious, the conduct that Commonwealth Edison could be responsible for would be conduct that's objectively reasonable. Exactly, Your Honor. And we have to say as a matter of law that the conduct here was not objectively reasonable. Yes, Your Honor. And I think Judge Daniels was correct in describing the conduct here as so extreme and so outrageous. And just so it's clear, when what's not objectively reasonable, it's not necessarily the willingness of the homeowner to take matters into their own hands, but the manner in which they did. That is by the use of the metal cable. You contend that that is the objective. Certainly by the use of the metal cable and by a number of other things, Your Honor. The exception to the open and obvious assumes that the person will take the risk regardless of the open and obvious condition. Correct. But when they do so, they'll at least be objectively reasonable in doing it. Yes. The restatement formulation is that there has to be some basis where the advantages of what the plaintiff is doing appears to outweigh the apparent risk. But you don't suggest that there's any case, at least as far as you've discovered in Illinois, that is analogous in the sense that multiple calls were made to try to get comment out there and trim this bridge. No, Your Honor, but I would still maintain that the conduct here was not foreseeable because as the unrefuted affidavit in the record about standard procedures here suggests, there should have been an additional call saying, you know, we're going to have people out there. There's going to be, you know, people out there. Forget about the additional call. Is that what you're going to hang your head on, that they should have made one more phone call before they attempted this? Or are you saying that what they did or the manner in which they did it was objectively unreasonable? I'm saying both of those things, Your Honor. But let's go back to the call because didn't someone come out there from comment? There is testimony that someone from comment came out there. And if someone came out there from comment, why didn't that individual begin the process of whatever was needed to rectify the problem, as opposed to putting the burden on the homeowner to make that one more phone call? Why should that one more phone call even come up? Your guy was out there. He saw the problem. He recognized the problem. Well, there's no testimony that the commonwealth representative who went out there recognized or acknowledged the problem. But if we take everything in the light most favorable to the plaintiff, that's certainly the inference that could be drawn, that he recognized the problem and he said ComEd better come out here and do something about it. Well, let's assume that to be true for purposes of summary judgment, Your Honor. And let's assume that ComEd didn't respond. That doesn't make the open and obvious character of the danger presented by that high voltage wire any less open and obvious. Whatever self-help the homeowner chooses to deal with still has to deal with that problem. That is still a potentially fatal danger that exists out there in the real world. And it's certainly not objectively reasonable for Commonwealth Edison to expect the concerted, multi-stage set of events that took here where the homeowner hired out construction equipment and took an electrical hazard that was 25 or 30 feet in the air and got up close and personal with it and selected a conductive material, selected that metal cable, and manipulated that within just several feet of this cable. This was the creation of an entirely new hazard. There was no danger to Mr. Farfan from that sparking 25 or 30 feet in the air. The plaintiffs created an entirely new hazard. They conducted that electrical hazard from 30 feet in the air down to the ground. The hazard that was called into Commonwealth Edison didn't hurt anybody and it didn't kill Mr. Farfan. What killed Mr. Farfan was the entirely new set of conditions that the plaintiffs created with this amateurish approach to tree trimming that they employed on the evening in question. All right. Counsel, that's your wrap-up? I'd just leave you with one final thought, Your Honor, and that is if the conduct of the plaintiffs in this case is objectively reasonable, there's no limit to objective foreseeability. There's no limit to duty. Let me leave you with this. If we found that the conduct of the plaintiffs was objectively reasonable in this case, I think ComEd would change its ways. Anything else? I would respectfully disagree that there's anything ComEd can do to correct conduct. You don't think ComEd could have come out sooner? You don't think ComEd could have sent out the tree trimmers sooner? You don't think any of that? I think, Your Honor, that ComEd, in fairness and consistent with duty principles in Illinois, cannot be held liable for conduct that extreme. I just wanted to add one thing to what Justice Garcia said. We will decide this case based on the law and the evidence, but we don't want to give Commonwealth Edison a message that they can go around disregarding phone calls of homeowners and get away with it. I hope you can bring that message to them. I think Commonwealth Edison understands that, Your Honor. Okay. And your comment is well taken. Thank you. All right. Thank you, Counsel. Mr. Grace, a brief rebuttal. Justice Gordon, that's the public policy issue right here, and you've hit the nail right on the head, as they say. The first thing counsel said was the big concern about the phone call was damage to the feeder line never came up about safety and how someone could get injured by this. And the more and more that they ignore their standards, they only inspect 10% of the trees per the testimony and the deposition for trim, 10% of the trees. Look, I know ComEd's got a large area they're delivering, but 10%, maybe a little more than that can help people from not doing what they did. Do you want your ComEd bills to go up? Is that it? You can't have both. You can't have 90%, 100%, and yet have your ComEd bills not go up. I hear what you're saying, but maybe a little more than 10% would be nice. Or at least look at them, at least respond to complaints, at least have standards that are actually meaningful. All right, counsel. Thank you very much. The case will be taken under advisement.